UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
────────────────────────────────────────

JOHN COUSER,

                  Petitioner,

          V.

ANTHONY ZON,

                 Respondent.

────────────────────────────────────────

**REPORT AND
RECOMMENDATION**

05-CV-1040
(TJM /VEB)

## I. INTRODUCTION

Petitioner John Couser, acting *pro se*, commenced this action seeking habeas corpus relief pursuant to 28 U.S.C. § 2254.  Petitioner is an inmate at the Wende  Correctional Facility.  In 2001, he was convicted in a New York State court of one count of First Degree Murder, two counts of Second Degree Murder, two counts of Second Degree Attempted Murder, and one count of Conspiracy in the Second Degree.  Petitioner contends that his conviction was imposed in violation of his constitutional rights and should therefore be vacated.

This matter was referred to the undersigned by the Honorable Norman A. Mordue, Chief United States District Judge, pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), and is presently before this Court for a report and recommendation. (Docket No.17).

## II. BACKGROUND

**A.  Facts**

The following factual summary is derived from the state court records. Petitioner,

while incarcerated in Rochester on robbery and attempted murder charges, conspired with others to have the complaining witness, James Hackett, killed. (T at 718, 720-724, 997).[1] To that end, Petitioner's wife hired a private investigator to locate James Hackett. (T at 1027-29). The investigator provided Petitioner with an address and Petitioner gave that address to his coconspirators. (T at 1037, 1243).

On the morning of February 23, 1997,when the coconspirators arrived at that address, they found the complaining witness's 62-year-old mother and his two nephews, ages fourteen and fifteen. (T at 485-87, 644-45, 991, 1162). The coconspirators tied the woman and two boys up with a telephone cord and shot them each in the head. (T at 497-98, 652, 996, 1101-02, ). The mother of the complaining witnesse died as a result of her wounds and the two boys were seriously injured. (T at 530, 582-83, 1168-69). The nephews were able to identify some of the assailants and eventually, one of the coconspirators, Lisa Johnson, confessed. (T at 659, 684).

Thereafter, an Onondaga County Grand Jury returned Indictment Number 97-743, which charged Petitioner and one of his coconspirators, James Stanback[2] with two counts of Murder in the First Degree, in violation of New York Penal Law ("NYPL") §125.27[3]; one count of Murder in the Second Degree in violation of NYPL §125.25(1) (intentional murder); two counts of Attempted Murder in the First Degree, in violation of NYPL §110.00; two counts of Attempted Murder in the Second Degree, in violation of NYPL §110.00 ,as further

---

[1]References preceded by "T" are to the transcript pages of Petitioner's trial.

[2]James Stanback plead guilty to second-degree murder on October 6, 1997 in exchange for a prison sentence of 25 years to life.

[3]Unless otherwise indicated, all references to the NYPL are to McKinney 1998.

defined in §125.25(1); and one count of Conspiracy in the Second Degree, in violation of NYPL §105.15.  Subsequently, the Grand Jury returned Indictment Number 98-0248-1, charging Petitioner with Murder in the Second Degree, on a felony murder theory[4], in violation of NYPL §125.25(3).

### B.    State Trial Court Proceedings

The Honorable Joseph E. Fahey, Onondaga County Court Judge, presided over Petitioner's trial proceedings.  The trial began on March 5, 2001, and concluded on March 14, 2001. Petitioner was represented by J. Scott Porter, Esq. and Edward W. Klein, Esq. At the conclusion of the trial, the jury found Petitioner guilty of Murder in the First Degree, Conspiracy in the Second Degree, two counts of Attempted Murder in the Second Degree, and two counts of Murder in the Second Degree.  (T at 1508-09).

On March 29, 2001, Petitioner was sentenced as a second felony offender to a determinate sentence of life without parole for his conviction of Murder in the First Degree; an indeterminate sentence of seven and one-half (7 ½) years to fifteen (15) years for his conviction of Conspiracy (to run consecutively to his sentence for Murder in the First Degree); an indeterminate sentence of twenty-five (25) years to life for each of his two convictions of Second Degree Murder; a determinate sentence of twenty-five (25) years for each of his two convictions of Attempted Murder in the Second Degree (to run consecutively to his sentences for Murder in the First Degree, Conspiracy and Attempted

---

[4]The underlying felony for the felony murder was the burglary of the Hackett home.

Murder).  (S at 21-23).[5]


## C.    State Appellate Proceedings

Petitioner, represented by J. Scott Porter, Esq., appealed his conviction to the Appellate Division, Fourth Department, of the New York State Supreme Court.  Petitioner asserted twelve arguments before the Appellate Division: (1) the trial court erred in not dismissing all of the counts of intentional crimes; (2) the evidence proving second-degree intentional murder was legally insufficient and the trial court impermissibly amended the indictment; (3) the evidence of first-degree murder was legally insufficient; (4) the trial court's jury charge on predicate felony and felony murder was erroneous and the evidence of that conviction was legally insufficient; (5) the evidence of conspiracy was legally insufficient;  (6) the court's instruction on second-degree attempted murder improperly transformed the second-degree charges into attempted first-degree murder; (7) the trial court erroneously precluded evidence with respect to coconspirators' "home invasion" a month earlier; (8) admission of graphic photographs and videotape testimony deprived Petitioner of a fair trial; (9) the trial court erred in allowing the District Attorney to testify as to the circumstances surrounding the grant of immunity to a coconspirator; (10) the court erred in holding that Petitioner lacked standing to challenge the search of his jail cell; (11) notes from Petitioner's personally hired investigator and notes regarding his case in Monroe County constituted work product and attorney-client privilege and should accordingly not have been admitted into evidence; and (12) the court erred in sentencing Petitioner to

---

[5]References preceded by "S" are to the transcript pages of Petitioner's sentencing proceedings.

consecutive sentences and that the sentences were excessive.  (Docket No. 18, Att. 1).

On March 21, 2003, the Appellate Division, Fourth Department, issued an order reserving decision on Petitioner's appeal and remitting the matter to the trial court for a suppression hearing.   The Appellate Division agreed that Petitioner had standing to challenge the search of his jail cell.  People v. Couser, 303 A.D.2d 981 (4th Dep't 2003).

Thereafter, the County Court conducted a suppression hearing to determine whether the items admitted into evidence at trial were properly seized.  On December 12, 2003, the County Court held that all of the items except for one were properly seized. On March 24, 2006, Petitioner's counsel filed a supplemental brief arguing that the suppression court erred in not suppressing all of the evidence seized during the search.  (Docket No. 18, Att. 3).

On November 19, 2004, the Appellate Division, Fourth Department, reversed Petitioner's convictions for first degree murder, second degree intentional murder, and two counts of attempted second degree intentional murder.  People v. Couser, 12 A.D.3d 1040 (4th Dep't 2004).  The appeals court found that there was "no evidence that [Petitioner] shared a community of purpose with the coconspirators to kill anyone other than the complaining witness."  Id. at 1041.  With respect to Petitioner's remaining claims, the appeals court found those to be meritless and affirmed his remaining convictions for conspiracy and felony murder.  Id. at 1042.

On December 9, 2004, Petitioner's counsel filed an application for leave to appeal to the Court of Appeals to grant leave as to the other issues raised on appeal.  Thereafter, the prosecutor also sought leave to appeal from the reversal of Petitioner's convictions.  Petitioner also filed a supplemental leave to appeal letter regarding his consecutive sentences.   Both applications for leave to appeal to the Court of Appeals were denied by

the Court of Appeals on January 25, 2005. <u>People v.Couser</u>, 4 N.Y.3d 762 (2004).

### D.   Federal Habeas Corpus Proceedings

Petitioner, proceeding *pro se*, commenced this action on July 16, 2005, by filing a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. (Docket No. 1).   In his Petition, Petitioner asserts nine grounds for habeas relief: (1) unfair prejudice resulting from charged intentional murder and attempted murder counts, which were ultimately reversed, had a "spillover" prejudicial effect on his other convictions; (2) the trial court erred in omitting the "intent" element of unlawful entry in charging burglary as the underlying felony to felony murder; (3) the evidence of accomplice liability for the burglary is legally insufficient; (4) the charge to the jury on conspiracy omitted the element that Petitioner "knowingly" entered the conspiracy; (5) there was legally insufficient evidence to prove conspiracy; (6) the trial court erred in precluding evidence demonstrating that the coconspirators were involved in a home invasion a month before the murder; (7) the trial court erred in allowing the introduction of graphic photographs and a videotape were allowed into evidence; (8) the court violated the "unsworn witness" rule in permitting the District Attorney to testify regarding the immunity agreement for one of the coconspirators; and (9) the court erred in not suppressing the evidence obtained from the search of Petitioner's jail cell.  (Docket No. 1).

Respondent filed submissions in opposition on May 17, 2006.  (Docket Nos. 11 &12). Petitioner filed his Traverse on June 15, 2006. (Docket No. 15).   For the reasons that follow, the Court recommends that the petition be DISMISSED.

### III. DISCUSSION

**A.      Federal Habeas Corpus Standard**

Federal habeas corpus review of a state court conviction is governed by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  Under  AEDPA, federal courts must give substantial deference to a state court determination that has adjudicated a federal constitutional claim "on the merits."  28 U.S.C. § 2254(d); Sellan v. Kuhlman, 261 F.3d 303, 309-10 (2d Cir. 2001).  The Second Circuit has stated that an "adjudication on the merits" is a "substantive, rather than a procedural, resolution of a federal claim." Sellan, 261 F.3d at 313 (quotation omitted).  The Second Circuit has also held that even a one-word denial of a petitioner's claim is sufficient to constitute an "adjudication on the merits" for purposes of AEDPA.  Id. at 312-313.

Specifically, AEDPA requires that where a state court has adjudicated the merits of a Petitioner's federal claim, habeas corpus relief may not be granted unless the state court's adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Both AEDPA and its predecessor statute recognize that a presumption of correctness shall apply to state court findings of fact, Whitaker v. Meachum, 123 F.3d 714, 715 n. 1 (2d Cir. 1997), and AEDPA requires a Petitioner to rebut that presumption by "clear and

convincing evidence." 28 U.S.C. § 2254(e)(1); LanFranco v. Murray, 313 F.3d 112, 117 (2d Cir. 2002). A presumption of correctness applies to findings by both state trial and appellate courts. Galarza v. Keane, 252 F.3d 630, 635 (2d Cir. 2001); Whitaker, 123 F.3d at 715 n.1.

In Williams v. Taylor, 529 U.S. 362, 413 (2000), the Supreme Court defined the phrases "contrary to" and "unreasonable application of" clearly established federal law. A state court decision is "contrary to clearly established federal law . . . if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Court] has on a set of materially indistinguishable facts." Id.

A state court decision involves "an unreasonable application of" Supreme Court case law if it "identifies the correct governing legal principle from [the Court's] decisions but unreasonably applies that principle to the particular facts of [a] prisoner's case." Id.

Under this standard, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. In order to grant the writ there must be "some increment of incorrectness beyond error," although "the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000) (internal quotation marks omitted).

**B.    Petitioner's Claims**

As set forth above, Petitioner asserts nine claims for habeas relief. This Court will

address each claim in turn.

1.       **Ground One: Alleged Resulting Prejudice from Intentional Murder Counts**

In Petitioner's first claim for habeas relief, he asserts that he was prejudiced by the "insertion of the intentional murder counts." Petitioner argues that because his convictions for those crimes were reversed, they should not have been charged in the first place. He argues that his defense of the other charges against him was prejudiced by the fact he was charged with the intentional murder crimes. Petitioner made this argument before the Appellate Division on direct appeal. The Appellate Division did not specifically reference this argument, but did state that it had reviewed Petitioner's remaining contentions and found them to be without merit. Couser, 12 A.D.3d at 1042.

Respondent argues that Petitioner cannot show that finding is contrary to, or based upon an unreasonable application of, Supreme Court law. (Docket No. 12 at 30). Specifically, Respondent argues that because the Supreme Court has never found "spillover" prejudice to violate a federal constitutional right, the Appellate Division's decision cannot, as a matter of law, be contrary to clearly established federal law, as determined by the Supreme Court. (Id.).

The Second Circuit has discussed the issue of "spillover" prejudice. In discussing this issue of whether the prejudice of the evidence submitted for the vacated convictions has a "spillover" effect on the remaining, *i.e.* unvacated, convictions, the Second Circuit has held that three factors must be analyzed: "1) whether the evidence on the vacated counts was inflammatory and tended to incite or arouse the jury to convict the defendant on the remaining counts; 2) whether the evidence on the vacated counts was similar to or distinct

from that required to prove the remaining counts; and 3) the strength of the government's case on the remaining counts." Lindstadt v. Keane, 239 F.3d 191, 205 (2d Cir. 2001) (citing United States v. Naiman, 211 F.3d 40, 50 (2d Cir.2000)).

In the present case, with respect to the first and second factors, admission of evidence of the murder and attempted murders was required to establish Petitioner's other charges for felony murder and conspiracy.  Evidence of the murder of the cooperating witnesses' mother was necessary to establish the elements of the non-intentional crimes charged. Therefore, even had Petitioner only been charged with the felony murder and conspiracy charges, evidence related to intentional  murder would still have been permitted.

With respect to the third factor, the strength of the evidence against Petitioner on the felony murder and conspiracy charges was compelling.  The evidence showed that Petitioner was awaiting trial in an attempted murder involving a shooting and related burglary case in Rochester.  (T at 601-02).  The complaining witness, James Hackett, was set to testify against Petitioner that Petitioner shot him in a dispute over drugs.  (T at 601).  The complaining witness was the only eyewitness to this crime. (T at 571).  There was evidence that Petitioner arranged to have a private investigator find out where the complaining witness lived.  (T at 1027-29, 1039-40).  Additionally, there was evidence that the coconspirators visited Petitioner in jail prior to the murder.   (T at 970, 630).  There was also coconspirator testimony incriminating Petitioner as well as inmate acquaintances who testified against him. (T at 657-58, 659, 684, 718, 970, 1006).

Respondent correctly notes that there is no Supreme Court authority with respect to "spillover" prejudice.  Therefore, since the Supreme Court has taken no position on the issue, it would be impossible for this Court to determine that the state court's decision violated

10

"clearly established Federal law as determined by the Supreme Court of the United States." Allaway v. McGuiness, 301 F.Supp. 2d 297, 300 (S.D.N.Y. 2004).  In any event, even when analyzing Petitioner's claim in relation to the factors set forth by the Second Circuit, his claim must still fail.  Accordingly, Petitioner's first claim for habeas relief should be DISMISSED.

### 2.    Grounds Two and Four: Alleged Erroneous Jury Charge

In Petitioner's second and fourth grounds for habeas relief, he asserts that the trial court improperly omitted an instruction to the jury with respect to the burglary[6] and conspiracy counts.  In Petitioner's second ground, he asserts that the trial court failed to instruct the jury that they needed to find that unlawful entry was committed with the "intent to commit a crime therein."  (Docket No. 1 at 8, referencing Docket No. 18, Att. 1 at 62).  In his fourth ground he claims that the trial court omitted the charge that he "knowingly" entered the conspiracy. (Docket No. 1 at 8, referencing Docket No. 18, Att. 1 at 71).  Respondent argues that Petitioner's second ground is procedurally barred, and in any event, both grounds are meritless.

### a.    Ground Two: Jury Charge on Predicate Crime of Burglary

Petitioner raised this claim before the Appellate Division who found that it "[was] not preserved for [their] review," and went on to state that they "decline to exercise [their] power to review that contention as a matter of discretion in the interest of justice."  People v. Couser, 12 A.D.3d at 1042 (citing 470.15 [6] [a]).  For this reason, Respondent argues that Petitioner's second ground is procedurally barred.

_____

[6]An instruction on burglary as the underlying felony to the felony murder count was given, even though burglary was not charged as a separate count in the indictment.

i.      **Procedural Bar**

The Supreme Court has held that federal courts shall "not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment." Coleman v. Thompson, 501 U.S. 722, 729, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991) (citations omitted). "This rule applies whether the state law ground is substantive or procedural." Id. (citations omitted).

The independent and adequate state ground doctrine may bar federal habeas review "when a state court declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement" for in such cases "the state judgment rests on independent and adequate state procedural grounds." Id. (citing, inter alia, Wainwright v. Sykes, 433 U.S. 72, 81, 87, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977)).                .

In the present case, the state court denied Petitioner's claims with respect to the jury instructions and cited § 470.05 (2) of the New York Criminal Procedure Law, which is commonly known as the "contemporaneous objection" rule.  The Second Circuit has held that New York's contemporaneous objection rule is an "adequate and independent" state ground for procedural default in cases where defense counsel has failed to object. See Velasquez v. Leonardo, 898 F.2d 7, 9 (2d Cir.1990) (violation of New York's contemporaneous objection rule is an adequate and independent state ground); Garcia v. Lewis, 188 F.3d 71, 79 (2d Cir.1999); Murray v. Carrier, 477 U .S. at 485-92, 106 S.Ct. 2639.

Petitioner asserts in his Traverse that trial counsel did preserve this ground by contemporaneous objection and he cites to pages 1483 through 1484 of the trial transcript

12

to support this argument.  Although non-compliance with the contemporaneous objection rule generally bars federal habeas review, the "mere invocation of a procedural bar does not  . . . preclude review" by a federal court.  <u>Caston</u>, 74 F. Supp. 2d at 266-67; <u>see</u> <u>also</u> <u>Miller</u> v. <u>Walker</u>, 413 F. Supp.2d 251, 259 (W.D.N.Y. 2006).

Indeed, as the Second Circuit has noted, the habeas court's "responsibility to ensure that the state rule is 'adequate' obligates [the court] to examine the basis for an application of state law." <u>Garcia</u>, 188 F.3d at 77; <u>see</u> <u>also</u> <u>Cotto v. Herbert</u>, 331 F.3d 217, 239 (2d Cir. 2003) ("Before accepting a procedural bar defense, a federal court must examine the adequacy of the alleged procedural default.").  Where the petitioner clearly complied with the applicable state procedural rule, the bar asserted by the state court will not preclude federal habeas review. <u>See</u> <u>Sanford v. Burge</u>, 334 F.Supp.2d 289, 298-300 (E.D.N.Y. 2004); <u>Cotto</u>, 331 F.3d at 240 (citing <u>Lee v. Kemna</u>, 534 U.S. 362, 376, 122 S.Ct. 877, 885, 151 L.Ed.2d 820 (2002)).

As such, this Court must examine the adequacy of the alleged procedural default cited by the Appellate Division in this particular case.  A review of the trial transcript reveals that Petitioner's trial counsel did, in fact, interpose specific contemporaneous objections with respect to the jury charge on conspiracy and association, felony murder, and other charges, but did not state that he was objecting to the charge on burglary or with respect to the element of intent as it related to the burglary charge.  (T at 1484).  Therefore, the Appellate Division's reliance on the contemporaneous objection rule as a procedural bar appears to be an independent and adequate state ground barring this Court's review of Petitioner's second ground.

### ii.     Cause and Prejudice

13

A petitioner may obtain habeas review of an otherwise procedurally defaulted claim only if he can show "cause for the default and prejudice attributable thereto, or demonstrate that failure to consider the federal claim will result in a fundamental miscarriage of justice." Id., 489 U.S. at 262, 109 S.Ct. 1038 (internal citations omitted); accord, e.g., Fama v. Commissioner of Corr. Servs., 235 F.3d 804, 809 (2d Cir.2000).

As set forth above, trial counsel for Petitioner did not interpose a contemporaneous objection with respect to the charge for burglary. As such, the claim is procedurally barred. Having found that the state has clearly and expressly stated that its judgment rested on an adequate and independent state procedural bar, namely, the contemporaneous objection rule, this Court is precluded from reviewing the claim unless Petitioner demonstrates both cause for the procedural default and resulting prejudice, or alternatively, that a fundamental miscarriage of justice would occur absent federal court review.   In order to show a "fundamental miscarriage of justice," Harris, 489 U.S. at 262, 109 S.Ct. 1038, a petitioner must demonstrate "actual innocence." Calderon v. Thompson, 523 U.S. 538, 559, 118 S.Ct. 1489, 140 L.Ed.2d 728 (1998); accord Washington v. James, 996 F.2d 1442, 1447 (2d Cir.1993), cert. denied, 510 U.S. 1078, 114 S.Ct. 895, 127 L.Ed.2d 87 (1994);  St. Helen v. Senkowski, 374 F.3d 181, 184 (2d Cir.2004) ("In the case of procedural default ... [federal courts] may reach the merits of the claim 'only if the defendant can first demonstrate either cause and actual prejudice, or that he is actually innocent.' ") (quoting Bousley v. United States, 523 U.S. 614, 622, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998)).

 Petitioner suggests that the procedural bar should be excused based upon ineffective assistance of counsel.  Specifically, Petitioner argues in his Traverse that if this Court "deems" counselor's actions did not preserve this ground for review than the cause element

14

is "satisfied by counsel's ineffectiveness."  (Docket No. 15 at 5).  However, the ineffective assistance of counsel may only constitute "cause" sufficient to overcome a procedural bar where the ineffective assistance claim is itself not procedurally barred.  See Murray v. Carrier, 477 U.S. 478, 488-89 (1986) ("[E]xhaustion doctrine ... generally requires that a claim of ineffective assistance be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default.").  Petitioner has never raised a claim of ineffective assistance of counsel previously and therefore that claim is itself procedurally barred and cannot serve as cause sufficient to overcome the procedural bar.

Therefore, Petitioner has not alleged any facts that would constitute cause for default. Finally, Petitioner has not come forward with any "new evidence" to support a claim that he is "actually innocent" of the charges on which he was convicted, as required to establish that denial of the claim as procedurally barred would result in a fundamental miscarriage of justice. See Schlup v. Delo, 513 U.S. 291, 327, 115 S.Ct. 851 (1995).  Accordingly, the procedural default bars federal review of Petitioner's claim with respect to the burglary charge and it should be DISMISSED.

### iii.    Merits of Claim

Even assuming *arguendo* that Petitioner's trial counsel's arguments with respect to the other jury charges constituted a contemporaneous objection preserving this claim for habeas review, the claim with respect to the jury charge is meritless.

As an initial matter, even if the trial court's instruction did constitute error under state law, that error, in and of itself, would not be grounds for habeas relief.  It is well-established that a federal habeas court "is limited to deciding whether a conviction violated the

Constitution, laws, or treaties of the United States." Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) ("We have stated many times that 'federal habeas corpus relief does not lie for errors of state law.'") (quoting Lewis v. Jeffers, 497 U.S. 764, 780 (1990)); see also 28 U.S.C. § 2254(a).

Before a federal court may overturn a conviction resulting from a state trial in which an erroneous instruction was used, or a properly requested instruction was not given, it must be established not merely that the instruction was erroneous, but that it "violated some right which was guaranteed to the defendant by the Fourteenth Amendment." Cupp v. Naughten, 414 U.S. 141, 146 (1975); accord, e.g., Davis v. Strack, 270 F.3d 111, 123 (2d Cir.2001).

The Supreme Court held in United States v. Frady that the "degree of prejudice" a petitioner is "required ... to show before obtaining unilateral relief for error in the jury charge" is "whether the ailing [jury] instruction by itself so infected the entire trial that the resulting conviction violates due process, not merely whether 'the instruction is undesirable, erroneous, or even universally condemned.'" 456 U.S. 152, 169 (1982) (quoting Henderson v. Kibbe, 431 U.S. 145, 154 (1977) (quoting Cupp, 414 U.S. at 146, 147) (quotation marks omitted).

The Supreme Court reaffirmed in Frady that "'[t]he burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack on the constitutional validity of a state court's judgment is even greater than the showing required to establish plain error on direct appeal.'" 456 U.S. at 166 (quoting Henderson v. Kibbe, 431 U.S. at 154) (footnotes omitted); accord Del Valle v. Armstrong, 306 F.3d 1197, 1200 (2d Cir.2002) ("[T]he [Supreme] Court has held that a state prisoner making a claim of improper jury instructions faces a substantial burden [.]").

16

The Supreme Court has specifically rejected the notion that "an error in the instructions concerning an element of the crime charged amounts to prejudice *per se*, regardless of the particular circumstances of the individual case." United States v. Frady, 456 U.S. at 169 (reaffirming holding that a petitioner seeking relief on the basis of an erroneous jury charge "must shoulder the burden of showing, not merely that the errors at his trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions"). In weighing the prejudice to a defendant from an allegedly improper charge, the challenged instruction "may not be judged in artificial isolation, but must be viewed in the context of the overall charge." Cupp, 414 U.S. at 147.

Petitioner asserts that the burglary charge was erroneous because the trial court failed to include the words  "intent to commit a crime" in it.  In charging the jury with respect to burglary, the trial court stated: "A person is guilty of burglary when he knowingly enters or remains unlawfully in a dwelling. . .   A person knowingly enters unlawfully into a dwelling when that person is aware that he or she is entering in the dwelling without license or privilege to do so."  (T at 1472).

While the trial court did not use the words "intent to commit a crime" in that portion of the charge on burglary, as set forth above, that charge must be viewed in context of the rest of the charge.  Cupp, 414 U.S. at 147.  The burglary charge was prefaced by this instruction from the trial court: "[Petitioner] solicited, requested, commanded, importuned or *intentionally* aided other individuals to unlawfully enter 131 ½ Shonnard Street . . . to *commit a crime in there* . . . (T at 1471) (emphasis added).  Therefore, a review of the jury instruction with respect to burglary, when viewed in context of the entire charge, reveals that the instruction

17

given, albeit inartful,  conveyed the proper standard to the jury.  As such, Petitioner cannot establish a constitutional violation with respect to the charge on burglary.  Accordingly, Petitioner's second ground for habeas relief should be DISMISSED.

**b.      Ground Four: Jury Charge with respect to Conspiracy**

In Petitioner's fourth ground for habeas relief, he also asserts that the trial court's charge with respect to conspiracy was erroneous.  Petitioner asserts that the trial court omitted the term "knowingly" from the charge.  (Docket No. 1 at 8).  Specifically, Petitioner's trial counsel asked the court to charge that Petitioner's entry into the conspiracy was made "knowingly." In other words, that Petitioner was aware of the nature of the conspiracy and that its purpose was to murder the complaining witness.  Petitioner first raised this claim before the Appellate Division who found that the charge on conspiracy "'as a whole adequately conveyed to the jury the appropriate standards'" Couser, 12 A.D.3d at 1041-42 (quoting People v Adams, 69 NY2d 805, 806 (1987)).

When instructing the jury on conspiracy, the trial court stated:

> [A] person is guilty conspiracy in the second degree, when with the intent to, that conduct constituting a Class A felony be performed, he or she agrees with one or more persons to engage in or cause the performance of such conduct. . . Intent means conscious objective or purpose.  A person acts with the intent that conduct constituting a Class A felony be performed, when his or her conscious objective or purpose is that such conduct be performed.  Under our law, murder is a Class A felony.

(T a t1459).  The language used in the charge, tracks, almost verbatim, the language in the statute with respect to the Conspiracy in the Second Degree.  See NYPL § 105.15[7].  As

---

[7]NYPL § 105.15 sets forth that:

A person is guilty of conspiracy in the second degree when, with intent that conduct constituting a class A felony be performed, he agrees with one or more persons to engage

such, Petitioner cannot even allege an error with respect to New York State law, let alone a federal constitutional issue.  Accordingly, Petitioner's fourth ground for habeas relief asserting an erroneous jury instruction should also be DISMISSED.

### 3.        Grounds Three and Five: Sufficiency of the Evidence

In Petitioner's third ground for habeas relief, he argues that there was insufficient evidence to establish accomplice liability for burglary, as a predicate to felony murder and in his fifth ground, he argues that there was insufficient evidence to establish conspiracy.

A habeas petitioner challenging the sufficiency of the evidence bears "a very heavy burden."  Ponnapula v. Spitzer, 297 F.3d 172, 179 (2d Cir.2002) (quotation marks omitted); Einaugler v. Supreme Court of New York, 109 F.3d 836, 840 (2d Cir.1997) (quotation marks omitted).  A habeas challenge to the sufficiency of the evidence "does not require a court to 'ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt.'" Jackson v. Virginia, 443 U.S. 307, 318-19, 99 S.Ct. 2781 (1979) (quoting Woodby v. INS, 385 U.S. 276, 282, 87 S.Ct. 483, 17 L.Ed.2d 362 (1966)).  Rather, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. (emphasis in original).

Thus, a habeas court must uphold a conviction unless, upon the record evidence adduced at trial, no rational trier of fact could have found that the prosecution established the defendant's guilt beyond a reasonable doubt. See id.; accord Ponnapula, 297 F.3d at 179

---

in or cause the performance of such conduct.

("[W]e review the evidence in the light most favorable to the State and [hold that] the applicant is entitled to habeas corpus relief only if no rational trier of fact could find proof of guilt beyond a reasonable doubt based on the evidence adduced at trial.").

### a.    Ground Three: Burglary as Predicate to Felony Murder

Petitioner was found guilty of committing felony murder under an accomplice liability theory. Petitioner argues that there was insufficient evidence to demonstrate that he knew the coconspirators' plan to commit burglary, or that he provided the means to assist them. Petitioner raised this claim before the Appellate Division on direct appeal. The Appellate Division found with respect to "the conviction of felony murder arising from the burglary of the Syracuse home that 'the intent necessary to sustain [that] murder conviction is inferred from the intent to commit [the burglary], a specific, serious, felonious act, even though the defendant, in truth, may not have intended to kill [the mother of the complaining witness].'" People v. Couser, 12 A.D.3d at 1041 (quoting People v Gladman, 41 NY2d 123, 125 (1976)).

A person is guilty of burglary "when he knowingly enters or remains unlawfully in a building with intent to commit a crime therein."  NYPL §140.20. The Penal Law defines an accomplice as "[w]hen one person engages in conduct which constitutes an offense, another person is criminally liable for such conduct when, acting with the mental culpability required for the commission thereof, he solicits, requests, commands, importunes, or intentionally aids such person to engage in such conduct." N.Y. Penal Law § 20.00.

In this case, as set forth above, there was evidence at trial to show that Petitioner arranged to have a private investigator find out where the complaining witness lived.  (T at 1027-29, 1039-40).  There was also evidence of the coconspirators visiting Petitioner in jail prior to the murder and that Petitioner provided those coconspirators with the complaining

witness' address.     (T at 970, 630).  There was coconspirator testimony against Petitioner indicating his involvement and agreement to the conspiracy, as well as inmate acquaintances who testified against him.  (T at 657-58, 659, 684, 718).  The coconspirators went to, entered and remained unlawfully in the complaining witness' home, and stole a significant amount of property from the house. (T at 993).  Lastly, Virginia Hackett, the complaining witness' mother, was executed and the complaining witness' nephews were victims of an unsuccessful execution.

Accordingly, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of felony murder under an accomplice liability theory with burglary as the predicate crime.  Jackson v. Virginia, 443 U.S. 307, 318-19 (1979).  As such, Petitioner's third ground for habeas relief should be DISMISSED.

### b.     Ground Five: Conspiracy

Petitioner was also found guilty of second degree conspiracy.  The Appellate Division found that there was sufficient evidence to support Petitioner's conviction on this charge. People v. Couser, 12 A.D.3d at 1041.

According to NYPL §105.15 "[a] person is guilty of conspiracy in the second degree when, with intent that conduct constituting a class A felony be performed, he agrees with one or more persons to engage in or cause the performance of such conduct."

In this case, the evidence showed that Petitioner, intending the murder of the complaining witness, agreed with coconspirators and planned the murder of the complaining witness.  Murder is a class A felony.  As set forth above, the evidence showed that Petitioner was awaiting trial for attempted murder and that Petitioner hired an investigator to find the

complaining witness' address.  Testimony established that Petitioner had his cousin, Cynthia Lewis, call the complaining witness' home posing as a telephone surveyor to determine where the complaining witness lived.  (T at 723).  The evidence at trial established that Petitioner met with his coconspirators and made it known to them as well as fellow inmates that he wanted the complaining witness dead to prevent him from testifying against him.  (T at 630-32, 718, 970, 1096).  The evidence further established that Petitioner also provided the coconspirators with Petitioner's address.   Accordingly, viewing this evidence in the light most favorable to the prosecution, any rational trier of fact could have found Petitioner guilty of second degree conspiracy beyond a reasonable doubt.   As such, Petitioner's fifth ground for habeas relief should be DISMISSED.

### 4.        Ground Six: Precluded Evidence

Petitioner's fourth ground for habeas relief is that he was precluded by the trial court from introducing evidence that his coconspirators were involved in a similar home invasion one month prior to the murder in this case.  Petitioner wished to argue that the home invasion was motivated by robbery, not murder.  However, the trial court ruled that the evidence was speculative.  Respondent asserts that Petitioner's claim is not cognizable on habeas review, and that the Appellate Division's rejection of the claim was not contrary to clearly established Supreme Court law, and in any event, the claim is meritless.

In general, "erroneous evidentiary rulings by a state trial court do not constitute a basis upon which a writ of habeas corpus can be issued." Underwood v. Kelly, 692 F.Supp. 146, 150 (E.D.N.Y.1988), aff'd, 875 F.2d 857 (2d Cir.1989); see Chandler v. Moscicki, 253 F.Supp.2d 478, 489 (W.D.N.Y.2003); see also, Rosario v. Kuhlman, 839 F.2d 918, 924 (2d

Cir.1988) (stating that "[i]t is true that erroneous evidentiary rulings do not automatically rise to the level of constitutional error").

Petitioner must therefore demonstrate that the preclusion of the challenged evidence violated an identifiable constitutional right. Roberts v. Scully, 875 F.Supp. 182, 189 (S.D.N.Y.1995), aff'd mem., 71 F.3d 406 (2d Cir.1995). On this issue, Petitioner bears a heavy burden. Id. "Only a very narrow class of infractions violates fundamental fairness." Sims v. Stinson, 101 F.Supp.2d 187, 194 (S.D.N.Y.2000) (citing Dowling v. United States, 493 U.S. 342, 352 (1990)). The Second Circuit has explained that, "[i]n order to prevail on a claim that an evidentiary error deprived [a] defendant of due process ... he must show that the error was so pervasive as to have denied him a fundamentally fair trial." Collins v. Scully, 755 F.2d 16, 18 (2d Cir.1985) (citing United States v. Agurs, 427 U.S. 97, 108, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976)).

To determine whether the exclusion of evidence violated Petitioner's right to present a defense, this Court must first determine whether the trial court's evidentiary ruling was proper. See Wade v. Mantello, 333 F.3d 51, 59 (2d Cir. 2003). If the exclusion was improper, this Court must then consider "whether the omitted evidence would have created a reasonable doubt." Id.

Petitioner's trial counsel attempted to connect the coconspirators in Petitioner's case to a home invasion and murder in Rochester a month prior to the murder in this case. (T at 1183). There was a Sony Play Station stolen from the home in Rochester in that case, as well as a similar murder in that two women were tied up and shot in the head, execution style. (T at 1183). In Petitioner's case, there was a Sony Play Station found in the home of

one of the coconspirators, but the Rochester police could not confirm whether it was the machine stolen from the Rochester home.  (T at 1180).  However, Petitioner's trial counsel wanted to introduce evidence that the Play Station recovered from the coconspirator's home was possibly the one from the Rochester murder.  (T at 1180-81).

Despite the fact that the coconspirators in this case were not charged in connection with the Rochester case, Petitioner's trial counsel still wanted to enter evidence to show that there was a "possibility" that the coconspirators were involved in a similar home invasion and murder a month prior.  (T at 1184-85).   The trial court precluded the evidence as speculative. (T at 1180, 1183, 1184).   However, the trial court stated that although Petitioner's counsel would not be permitted to infer a connection between the coconspirator and the Play Station stolen in the Rochester murder, the trial court was "not preventing [Petitioner's counsel] from calling anybody to the stand. . . there [was] no blanket prohibition on [counsel] calling anybody." (T at 1322).

It appears that under Petitioner's theory, the coconspirators went to the complaining witness's home in Syracuse to commit a robbery and the fact that there was a possible link between the coconspirators and a home invasion and murder in Rochester was proof of their propensity to rob and murder.  Under the circumstances, and the nature of the evidence that Petitioner's trial counsel was attempting to put before the jury, there is no question that the evidence would have required the jury to speculate.  Petitioner's theory "rests on a series of inferences without a sufficient factual predicate." Wade, 33 F.3d at 61.  There was no direct connection between the coconspirators and the Rochester Play Station, and therefore, the only way to make that connection would have been through speculation.  Weighing the limited probative value of such evidence against the possibility of juror confusion

24

necessitated the preclusion of such evidence.   Accordingly, because the trial court's preclusion of this evidence was not in error, Petitioner's sixth ground for habeas relief should be DISMISSED.  Moreover, and in any event, given the tenuous nature of this evidence and the strong evidence of guilt, the introduction of the evidence concerning the other home invasion would not have created a reasonable doubt as to Petitioner's guilt.

### 5.      Ground Seven: Photographs

In Petitioner's seventh ground for habeas relief, he asserts that photographs and videotape of the crime scene were "grotesque and inflammatory" and deprived him of a fair trial.  (Docket No. 1 at 8).  Respondent argues that the Appellate Division's determination that the evidence was properly admitted is not contrary to, or based upon an unreasonable application of, Supreme Court law.

Under New York law, "photographs are admissible if they tend 'to prove or disprove a disputed or material issue, to illustrate or elucidate other relevant evidence, or to corroborate or disprove some other evidence offered or to be offered[,]' ... and ... should be excluded 'only if [their] *sole purpose* is to arouse the emotions of the jury and to prejudice the defendant[.]' " People v. Wood, 79 N.Y.2d 958, 582 N.Y.S.2d 992, 591 N.E.2d 1178 (N.Y.1992) (quoting People v. Pobliner, 32 N.Y.2d 356, 370, 345 N.Y.S.2d 482, 298 N.E.2d 637 (N.Y.1973) (emphasis supplied)("Where they are otherwise properly admitted as having a tendency to prove or disprove some material fact in issue, photographs of a corpse are admissible even though they portray a gruesome spectacle and may tend to arouse passion and resentment against the defendant in the minds of the jury[.]") (internal quotation marks and citation omitted)).

25

Even on direct appeal, the appellate court's review of a trial court's evidentiary rulings is limited: "When relevance is demonstrated, the question as to whether on balance the jury should be permitted to view such photographs is addressed to the sound discretion of the trial court[.]" The Court is mindful that, on habeas review, its role in reviewing claims of evidentiary error by the state trial court is even more circumscribed. See, e.g., Taylor v. Curry, 708 F.2d 886, 891 (2d Cir.1983) ("The finding of error does not, however, determine the outcome of this appeal. Erroneous evidentiary rulings do not automatically rise to the level of constitutional error sufficient to warrant issuance of a writ of habeas corpus. Rather, the writ would issue only where petitioner can show that the error deprived her of a fundamentally fair trial.") (citing Chambers v. Mississippi, 410 U.S. 284, 302-03, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973) (emphasis in original)). Thus, it matters not whether this Court would have decided to preclude the photographs; the only issue is whether the decision to enter the photographs denied Petitioner a "fundamentally fair" trial.

The trial court in this case heard oral argument from Petitioner's counsel that the photographs would inflame passions and were not relevant because Petitioner was not present at the scene of the murder.  (T at 480-81).  The court reviewed the photos that Petitioner's counsel objected to and found them not to be "overly prejudicial."  (T at 482). The trial court stated that the prosecution was "entitled to supply some context to their case." (T at 482).  Thus, the trial court found that the prejudicial effect did not outweigh the probative value of the photographs.

With respect to the videotape, Petitioner's counsel explained that his objection was to the portion of the videotape showing the victim, Virginia Hackett.  He objected on the grounds of relevancy and prejudice to Petitioner.  (T at 551-52).  The prosecution asserted

26

that the videotape was needed to show the crime scene, but that it would be stopped before it reached the point of close up views of the victim or the victim's wounds.  (T at 552). Therefore, the trial court admitted the videotape with the understanding that it would be stopped before any close up views of the victim could be seen.  (Id.).

As the videotape was shown, and as the victim came into focus on the video, there was a disruption in the courtroom.   Defense counsel informed the court that he heard a man say "He is a coward, he's coward [sic]," and a woman left the courtroom.  (T at 557).  The trial court stated that it did not hear any disruption. (Id.).  Defense counsel stated that he did not believe the jury heard anything either, but that he wanted to make sure it would not happen again.  (T at 557-58).   Thereafter, the court took a recess during which the court admonished the members of the gallery not to make any comments during the proceedings or they would be barred from the courtroom.  (T at 558-59).  The victim's actual injury was not shown, but her legs were visible.  (T at 560).

Additionally, during final instructions to the jury, the court stated that the jury was "not to dwell upon these photographs and videotape that when you view them, please do so quickly, casually, and unemotionally. . . your determination of the weight if any, if any, that you may see fit to give these photographs objectively and without emotion and without prejudice." (T at 1453-54).

These instructions are significant because as the Supreme Court has held consistently, jurors are generally presumed to follow their instructions.  Smith v. Texas, 543 U.S. 37, 46, 125 S.Ct. 400, 160 L.Ed.2d 303 (2004) (quoting Penry v. Johnson, 532 U.S. 782, 799, 121 S.Ct. 1910, 150 L.Ed.2d 9 (2001)); see also Greer v. Miller, 483 U.S. 756, 766 n. 8, 107 S.Ct. 3102, 97 L.Ed.2d 618 (1987) ("We normally presume that a jury will follow an

instruction to disregard inadmissible evidence ..., unless there is an 'overwhelming probability' that the jury will be unable to follow the court's instructions."); Richardson v. Marsh, 481 U.S. 200, 211, 107 S.Ct. 1702, 95 L.Ed.2d 176 (1987) (stating that "juries are presumed to follow ... instructions"); Shotwell Mfg. Co. v. United States, 371 U.S. 341, 367, 83 S.Ct. 448, 9 L.Ed.2d 357 (1963) (When a limiting instruction is clear, "[i]t must be presumed that the jury conscientiously observed it.").

In this Circuit, in cases where evidence is alleged to have been erroneously introduced, "[l]imiting instructions have been found to militate against a finding of constitutional error." Yapor v. Mazzuca, 2005 WL 894918, at * 15 (S.D.N.Y. Apr.19, 2005) (citing Peakes v. Spitzer, 04 Civ. 1342, 2004 WL 1366056, at *18 n. 29 (S.D.N.Y. June 16, 2004)) ("The jury is presumed to obey a court's curative instruction."); Cruz v. Greiner, 98 Civ. 7839, 1999 WL 1043961 at *31 & n. 26 (S.D.N.Y. Nov. 17, 1999) (rejecting petitioner's argument that "if you throw a skunk into the jury box, you can't instruct the jury not to smell it" and finding that the court's instruction to disregard inadmissible evidence rendered harmless any prosecutorial misconduct) (citations omitted). Here, the Court has no reason to believe that the jury in this case was unable to follow the instructions, Greer, 483 U.S. at 766 n. 8, 107 S.Ct. 3102.

In any event, a review of the record reveals that the photographs and videotape were not the basis for Petitioner's conviction.  As set forth above, there was more than sufficient evidence of Petitioner's involvement in the conspiracy leading to the victim's death. Therefore, even if the photographs and videotape were excluded, there would still have been a sufficient basis for Petitioner's conviction.  See Collins v. Scully, 755 F.2d 16,19  (2d Cir. 1985).  Thus, admission of the photographs and videotape did not deprive Petitioner of a

fundamentally fair trial.  Taylor v. Curry, 708 F.2d 886, 891 (2d Cir. 1983).[8]

Accordingly, Petitioner's claim for habeas relief based on the admission of the photographs and videotape should be DISMISSED.

### 6.    Ground Eight: District Attorney's Testimony

William Fitzpatrick, the District Attorney ("DA"), who was not the courtroom assistant district attorney prosecuting the case against Petitioner, testified as to an immunity agreement between the prosecution and one of the coconspirators, Lisa Johnson. In Petitioner's eighth ground for habeas relief, he asserts that the testimony from the DA violated the "unsworn witness" rule, whereby a prosecutor may not inject his own credibility into the trial.

The "unsworn witness" rule in the context of prosecutorial misconduct is a New York State rule that "generally stands for the proposition that the prosecutor may not inject his own credibility into the trial.... [T]he rule is founded upon the possible danger that the jury, impressed by the prestige of the office of the District Attorney, will accord great weight to the beliefs and opinions of the prosecutor." People v. Paperno, 54 N.Y.2d 294, 300-01, 445

---

[8]Although not related to his claim with respect to the photographic and video evidence, Petitioner also references testimony from an assistant district attorney ("ADA") who had prosecuted the attempted murder charges against him in.  The ADA testified that he was assigned to cases involving violent felony offenses and people who were "career criminals."   (T at 563).  Petitioner's counsel's objection was sustained. (T at 563).  Thereafter, a detective testified that he had read reports about the activities of Petitioner and others who would "do home invasions."  (T at 742).  Petitioner's counsel objected and moved for a mistrial on the basis of the ADA's testimony and the detective's testimony.  (T at 743).  The objection was granted.  (T at 743).  However, the court denied the motion for a mistrial, stating that the ADA's testimony was a truthful response about the work he does, and that the detective's testimony did not warrant a mistrial.  (T at 746).  The court issued a curative instruction to the jury to disregard the detective's answer.  (T at 746-47).  As set forth above, because jurors are presumed to follow their instructions and because of the more than sufficient evidence establishing Petitioner's guilt, Petitioner was not deprived of a fundamentally fair trial, and is therefore not entitled to relief based on these claims either.

29

N.Y.S.2d 119, 429 N.E.2d 797 (N.Y.1981) (cited in Dickens v. Filion, 02 Civ. 3450, 2002 WL 31477701, at *12 (S.D.N.Y. Nov.6, 2002)); see also United States v. Locascio, 6 F.3d 924, 933 (2d Cir.1993), cert. denied, 511 U.S. 1070 (1994). This rule is generally invoked in the context of a summation or closing argument when a prosecutor expresses personal opinions and beliefs regarding the evidence. "The unsworn witness rule essentially seeks to prevent a trial lawyer from achieving through unsworn comments and statements that which he could not provide under this rule through sworn testimony." Plato v. Poole, 2008 WL 222667 at *2 (E.D.N.Y. January 25, 2008). The "unworn witness" rule is not a federal constitutional right, but rather a New York State rule.

Petitioner cannot even show a violation of the New York State rule because, in this case, the District Attorney was sworn as a proper witness on a point relevant to the charges before the court. He was subjected to cross-examination and re-cross examination. (T at 591-94, 595-96). The unsworn witness rule covers the *trial* prosecutor in the case, and District Attorney William Fitzpatrick was not acting as trial prosecutor in Petitioner's case. See Ramey v. District 141, Int'l Ass'n of Machinists and Aerospace Workers, 378 F.3d 269, 282-83 (2d Cir. 2004) (the concerns reflected in the advocate-witness prohibition "are absent or, at least, greatly reduced, when [as here] the lawyer-witness does not act as trial counsel") (quoting Culebras Enter. Corp, v. Rivera-Rios, 846 F.2d 94, 100 (1st Cir.1988) ("even if he performs behind-the-scenes work for the client in the same case," a lawyer who is not trial counsel is not prohibited from testifying)).

Additionally, this Court has reviewed the District Attorney's testimony as to the immunity agreement he gave to Johnson, and finds it to be not unduly prejudicial to Petitioner. While it was rather unusual to call the District Attorney to testify as to an immunity

agreement, District Attorney Fitzpatrick made no comment about Johnson's character or the truthfulness of her testimony; his testimony was used dubiously as a foundation to admit Johnson's written immunity agreement.  (T at 588-89).  Accordingly, Petitioner's claim for habeas relief on this ground should be DISMISSED.

### 7.        Ground Nine: Suppression of Evidence Seized in Unlawful Search

In Petitioner's ninth ground for habeas relief, he asserts that certain evidence obtained from his prison cell during an unlawful search should have been suppressed.  Petitioner asserts that the warrant to search his cell was obtained through false and misleading information.  He further argues that the items seized were the result of attorney-client and work product privileges.   Respondent argues that this claim is barred pursuant to Stone v. Powell, 428 U.S. 465 (1976).

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV.  However, in Stone v. Powell, 428 U.S. 465, 482 (1976), the Supreme Court held that "where the State has provided an *opportunity* for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." (emphasis added).

Following Stone, the Second Circuit developed a "litmus test to discern when a state prisoner has been denied an opportunity for full and fair litigation of his fourth amendment claims." Capellan v. Riley, 975 F.2d 67, 69-71 (2d Cir. 1992)(citing Gates v. Henderson, 568 F.2d 830 (2d Cir. 1977)(en banc)).

31

Case 9:05-cv-01040-TJM-VEB   Document 19   Filed 04/23/08   Page 32 of 37

The Second Circuit has concluded that review of Fourth Amendment claims presented by habeas petitioners would be undertaken in only one of two instances: (a) if the State provided no corrective procedures at all to redress the alleged Fourth Amendment violations; or (b) if the State has provided a corrective mechanism, but the defendant was precluded from using that mechanism because of an "unconscionable breakdown in the underlying process." Id. (quoting Gates, 569 F.2d at 840 and citing McPhail v. Warden Attica Correctional Facility, 707 F.2d 67, 70 (2d. Cir 1983)).

"The federal courts have approved New York's procedure for litigating Fourth Amendment claims, embodied in N.Y.Crim. Proc. Law § 710.10 *et seq.* (McKinney 1984 & Supp.1988), as being facially adequate.'" Capellan, 975 F.2d at 70 n.1 (quoting Holmes v. Scully, 706 F. Supp. 195, 201 (E.D.N.Y. 1989) and citing Gates, 568 F.2d at 837 & n.4; Shaw v. Scully, 654 F. Supp. 859, 864 (S.D.N.Y. 1987)).

In the present case, Petitioner took advantage of New York's procedure for litigating his Fourth Amendment claim. The Appellate Division found that while there was probable cause for the search warrant, the warrant was overbroad and remitted the matter to "Onondaga County Court for a hearing to determine what evidence should be suppressed as the fruit of the invalid portion of the search warrant." People v. Couser, 303 A.D.2d at 981. The Appellate Division found that an "overbroad directive in a search warrant does not invalidate the entire search warrant." Id.

The County Court then conducted a suppression hearing to determine whether the items admitted at trial were properly seized. County Court concluded that all of the items were lawfully admitted except for one greeting card from his cousin, Cynthia Lewis. Petitioner's appellate counsel then filed a supplemental brief before the Appellate Division,

32

arguing that it was error not to suppress all items seized from Petitioner's jail cell.  (Docket No. 18, Exhibit 3, p.9-22).  The Appellate Division held that "[d]efendant, however, conceded on remittal that [two exhibits] were properly seized pursuant to the warrant. Even assuming, arguendo, that the court erred in refusing to suppress the other exhibits, we conclude that the error is harmless beyond a reasonable doubt."  People v. Couser, 12 A.D.3d at 1042. Thereafter, Petitioner was denied leave to appeal that decision by the Court of Appeals on November 19, 2004.  People v. Couser, 4 N.Y.3d 762 (2004).

Accordingly, New York State clearly provided corrective procedures to address Petitioner's Fourth Amendment claim.  See  Ferron v. Goord, 255 F. Supp.2d 127, 131-32 (W.D.N.Y. 2003) (holding that petitioner's "various applications before the trial and appellate state courts challenging the search warrant clearly show that he was given an opportunity for a 'full and fair' litigation of his Fourth Amendment claims.").

Therefore, the sole question presented with respect to this claim is whether there was an "unconscionable breakdown" in the corrective process provided by New York State.  This Court finds that Petitioner has failed to establish that an "unconscionable breakdown" occurred.

Petitioner asserts that the state court erroneously decided his motion to suppress the items seized from his cell, and he seems to be requesting that this Court conduct a *de novo* factual review of his claims. This relief, however, is expressly forbidden by the Stone v. Powell doctrine.

As the Second Circuit has explained many times, a petitioner's mere dissatisfaction or disagreement with the outcome of a suppression motion is not sufficient to establish that an "unconscionable breakdown" occurred in the existing process in violation of the

33

petitioner's Fourth Amendment rights under the Constitution. Capellan, 975 F.2d at 71 ("[T]o the extent that [petitioner] claims that the Appellate Division erred in its ruling ..., this would not give us authority to review his claims since a mere disagreement with the outcome of a state court ruling is not the equivalent of an unconscionable breakdown in the state's corrective process.") (emphasis supplied); Gates v. Henderson, 568 F.2d at 840 ( "Stone v. Powell ... holds that we have no authority to review the state record and grant the writ simply because we disagree with the result reached by the state courts.").

The Second Circuit has explicitly rejected the possibility of interpreting Stone v. Powell to require the reviewing court to focus on the correctness of the state court's corrective procedures for adjudicating Fourth Amendment claims, rather than on the existence and application of the corrective procedures themselves.

According to the Second Circuit, to subject a habeas petitioner's previously litigated Fourth Amendment claims to further federal review would be to assume, "implicitly at least, that state courts were not responsible forums in which to bring constitutional claims such as is presented herein." Capellan, 975 F.2d at 71.  Stone v. Powell, however, "expressly discouraged" it from making such an assumption. Id. (citing Powell, 428 U.S. at 493-94 n. 35) ("[W]e are unwilling to assume that there now exists a general lack of appropriate sensitivity to constitutional rights in the trial and appellate courts of the several States.").

Here, as noted above, Petitioner took full advantage of the available state process by presenting his Fourth Amendment claim on appeal and at the suppression hearing.  A petitioner's mere disagreement with the outcome of the state courts' rulings "is not the equivalent of an unconscionable breakdown in the state's corrective process." Capellan, 975 F.2d at 72; accord, e.g., Watkins v. Perez, No. 05 Civ. 477(GEL), 2007 WL 1344163, *23

(S.D.N.Y. May 30, 2007) (holding that without more, rejection by state appellate court of petitioner's Fourth Amendment claims, is not an "unconscionable breakdown" in the state's corrective process; noting that a "habeas court cannot grant relief simply because it may disagree with the state court's resolution of the claim"); Huntley v. Superintendent, No. 9:00CV191, 2007 WL 319846, at *8 (N.D.N.Y. Jan.30, 2007); Gonzalez v. Superintendent, Sullivan Corr. Fac., 761 F.Supp. 973, 977 (E.D.N.Y.1991) (rejecting habeas petitioner's claim that state court denied his request for a probable cause hearing based upon insufficient facts asserted to warrant such a hearing was "unconscionable breakdown" in the process afforded by the state; petitioner was provided, as mandated by Stone, with a full and fair opportunity to litigate his fourth amendment claim in the state courts and "[t]he fact that petitioner was denied his request for such a hearing does not, in and of itself, affect the legitimacy of the state process").

Under these circumstances, the doctrine of Stone v. Powell precludes *de novo* review of state court fact-finding on a Fourth Amendment issue.   Accordingly, the Court recommends that Petitioner's Fourth Amendment claims relating to suppression of the items seized from his cell be DISMISSED.

## IV. CONCLUSION

For the reasons stated above, the Court recommends John Couser's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 be denied and that the Petition be dismissed. Because Petitioner has failed to make a substantial showing of a denial of a constitutional right, I recommend that a certificate of appealability not issue.  See 28 U.S.C. § 2253(c)(2) (1996).

35

Respectfully submitted,

DATED:        April 23, 2008

Victor E. Bianchini
United States Magistrate Judge

Syracuse, New York

## V. ORDERS

Pursuant to 28 USC §636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within ten(10) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as NDNY Local Rule 72.1(c).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir.

36

1995); <u>Wesolak v. Canadair Ltd.</u>, 838 F.2d 55 (2d Cir. 1988); <u>see</u> <u>also</u> 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY Local Rule 72.1(c).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material *which could have been, but were not*, presented to the Magistrate Judge in the first instance. See <u>Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co.</u>, 840 F.2d 985 (1st Cir. 1988).

SO ORDERED.

April 23, 2008

Victor E. Bianchini
United States Magistrate Judge